**READING & BATES, INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 24891.

United States Court of Appeals
Fifth Circuit.

Nov. 12, 1968.

Rehearing Denied Jan. 10, 1969.

Rehearing En Banc Denied
Jan. 15, 1969.

Charles A. Kothe, Glenn R. Beustring, Kothe, Eagleton & Hall, Tulsa, Okl., for petitioner.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Ronald W. Egnor, Nancy M. Sherman, Attys., NLRB, Washington, D. C., for respondent.

Before RIVES and DYER, Circuit Judges, and MEHRTENS, District Judge.

MEHRTENS, District Judge:

Reading & Bates, Inc. has petitioned for review of a National Labor Relations Board order, pursuant to Section 10(f) of the Labor Management Relations Act [29 U.S.C. § 160(f)]; and the Board has cross-petitioned for enforcement. 29 U.S.C. § 160(e). The order was entered to remedy alleged violations of Section 8(a)(1) of the Act and the discharge of four employees found by the Board to be in violation of Section 8(a)(3). Except for the order that employee Robert W. Moore be reinstated with backpay, we enforce.

The Board found that appellant violated Section 8(a)(1) by interrogating and threatening employees about their union activities. It further found that a retroactive wage increase was made to forestall union organization, in violation of the same section. Employees Robert Evans, Floyd Langston, Claude Hebert, and Robert W. Moore were found to have been discharged discriminatorily because of their union activities in violation of Section 8(a)(3). The company was ordered to cease and desist from unfair labor practices, to reinstate the four employees, and to post appropriate notices.

In December, 1965, Reading & Bates assembled a complex and costly all-weather floating platform in Cook Inlet, near Anchorage, Alaska, and began oil drilling operations. Donald R. Stewart was superintendent of the platform involved (Platform B); and tool pushers Charles Coleman and William J. L'Hirondelle were Stewart's assistants. The rig was manned largely by workers from the Louisiana off-shore oil rigs. Experienced crews were difficult to find and keep due to severe weather and working conditions. Workers were not replaced easily; and a resignation usually caused an increase in other workers' duties until a replacement was hired.

In late December, 1965, or early January, 1966, six union-affiliated roustabouts were hired to assist the Reading & Bates crew on Platform B. The union men received higher pay than company men for comparable work, which caused dissatisfaction among company employees. Almost simultaneously, organizational efforts began. The remaining facts of the alleged violations, and the inferences to be drawn from them, have

been in dispute. The Trial Examiner's findings, which the Board adopted substantially intact, resolved almost all of the factual issues against the employer. Our only inquiry is whether the Board's findings are founded on "substantial evidence", considering the record as a whole. Universal Camera Corp. v. NLRB, 1950, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456.

### Section 8(a) (1) violations

■ The record, viewed as a whole, contains evidence which substantiates the findings of 8(a) (1) violations. It is undisputed that the company instituted a 10% wage increase for company employees on January 26, retroactive to January 23. Substantial evidence supports the Trial Examiner's finding that, prior to the increase, company management knew about organizational efforts and employee dissatisfaction with wages; that interrogation occurred and threats were made by company supervisors; and that tool pusher Coleman remarked after the increase "[w]hat do you think about the union now?"

■ Giving employees a raise is not an 8(a) (1) violation unless it is done to interfere with, restrain or coerce employees in the exercise of their rights of self-organization. An employer's interrogation of employees likewise is not a violation of Section 8(a) (1), *per se*. When interrogation is accompanied by implied or express threats of reprisal, or an atmosphere of hostility toward organization, and a wage increase is instituted to discourage organization, the Board may conclude as it did here that the employer intended to interfere with employees self-organization through interrogation, threats and the wage increase.

### Section 8(a) (3) violations

■ Section 8(a) (3) of the Act makes it an unfair labor practice to discriminate in regard to tenure of employment to discourage membership in a labor organization. An employee's discharge is violative of 8(a) (3) when both discrimination and an intent to discourage union membership are shown. NLRB v. Brown, 1965, 380 U.S. 278, 85 S.Ct. 980, 13 L.Ed.2d 839; American Shipbuilding Co. v. NLRB, 1965, 380

U.S. 300, 85 S.Ct. 955, 13 L.Ed.2d 855; NLRB v. Neuhoff Bros. Packers, Inc., 5 Cir. 1968, 398 F.2d 640. The employer's right to discharge an employee for "cause" is in no way impaired. 29 U.S.C. § 160(c). Cause, however, may not be used to camouflage a discriminatory discharge designed to discourage union membership. If the employee's misdeeds are so flagrant that he would almost certainly have been fired regardless of anti-union animus, then there is no "discrimination" within the meaning of 8(a) (3). The Board may look to the employer's intent, or the dominant motive behind discharge to determine whether discrimination has occurred. NLRB v. O. A. Fuller Super Markets, Inc., 5 Cir. 1967, 374 F.2d 197, 200. No 8(a) (3) violation occurs however, unless the employer acts discriminatorily with intent to discourage union membership, and such improper motive is a cause without which the employee would not be discharged. NLRB v. Neuhoff, supra.

■ Reading & Bates contends that all four discharges were for "cause" within the meaning of 29 U.S.C. § 160 (c); but the Board found that the employees were discharged in violation of 8(a) (3). Substantial evidence underlies the Board's ruling, except as to Robert W. Moore. Robert E. Evans, Floyd Langston, and Claude Hebert were discharged with some justification; but, viewed as a whole, we cannot say that the record clearly precludes the Board's decision from being justified by a fair estimate of the worth of the witnesses' testimony. Universal Camera Corp. v. NLRB, supra.

■,■ The Trial Examiner's findings and conclusions, and proposed Order which the Board adopted, fail to specifically find or conclude that the discharges were (1) discriminatory and (2) intended to discourage union membership. Instead, the discharges were found to have stemmed from anti-union animus, resulting, *ipso facto*, in 8(a) (3) violations. Nevertheless, we conclude from our study of the record that evidence supports the inferences the Board must have drawn to find 8(a) (3) violations in the cases of Evans, Langston and Claude Hebert. However, there

is insufficient evidence to support the Board's finding that Robert W. Moore's discharge was discriminatory; so enforcement of that portion of the Board's order must be denied. "Discrimination consists in treating like cases differently." Frosty Morn Meats, Inc. v. NLRB, 5 Cir. 1961, 296 F.2d 617, 621. Moore was discharged for sleeping on the job, an offense which under company policy called for "automatic" termination. This rule was enforced with an even hand, evidenced by the fact that tool pusher L'Hirondelle's brother had been caught sleeping on the job on a prior occasion and had been discharged forthwith. Moore's misdeed was of such a nature that he would certainly have been fired regardless of company anti-union animus. Discrimination plays no part in such a discharge; thus there is no violation of 8(a) (3). NLRB v. O. A. Fuller Super Markets, Inc., supra.

The company has maintained throughout that maritime standards govern its employee relations on the floating platform. The validity and application of that contention may be pretermitted in this case. If appellant's contention is correct, then at best it would give the company greater license to discharge an employee for "cause". Our decision in this case would not be any different even if appellant's position were adopted. Accordingly, the order on review will be enforced except as it relates to Robert W. Moore.

Enforced in part, enforcement denied in part.

### ON PETITION FOR REHEARING EN BANC

PER CURIAM:

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.